# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In Re: | |
| Monette E. Saccameno, | NO. 09-49467 |
| Debtor | Chapter 13 |
| | Honorable Judge Timothy A. Barnes |

## NOTICE OF MOTION

TO:    SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on February 2, 2015, at 9:30 AM, the undersigned will appear before the Honorable Timothy A. Barnes at the Dirksen Federal Building, located at 219 S. Dearborn Street, Courtroom 613, Chicago, Illinois and will then and there present the attached **DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §524 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION AND FED. R. BANKR. P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BASED CERTIFICATES, SERIES 2007 RP1 AND OCWEN LOAN SERVICING, LLC.**, at which time you may appear if you so choose.

### Certificate of Service

I, Paul M. Bach, hereby certify that I caused a copy of this notice to be served, via ECF to Marilyn O. Marshall (Chapter 13 Trustee) and the United States Trustee, to Richard Davis by Certified Mail Return Receipt Requested and via First Class US Mail to all other on the attached Service List and attached Motion upon the above parties on January 26, 2015, before the hour of 5:00 p.m. from the office located at 900 Jorie Blvd., Ste 150, Oak Brook, IL 60523.

> BY: /S/ PAUL M. BACH
> SULAIMAN LAW GROUP, LTD.
> COUNSEL FOR DEBTOR(S)
> 900 JORIE BOULEVARD, SUITE 150
> OAK BROOK, IL 60523
> PHONE: (630) 575-8181
> ATTORNEY NO: 6209530

**SERVICE LIST**

**Monette E. Saccameno**
3324 Calwagner Street
Franklin Park, IL 60131-2127

**Marilyn O Marshall**
224 South Michigan Ste 800
Chicago, IL 60604

**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

**David E Cohen**
Fisher Cohen Waldman Shapiro, LLP
1247 Waukegan Road
Suite 100
Glenview, IL 60025

**Potestivo & Associates**
223 West Jackson Blvd. Suite 610
Chicago, Illinois 60606

**Ocwen Loan Servicing, LLC**
C/O RA Illinois Corporation Service C
801 Adlai Stevenson Drive
Springfield, Illinois 62703

**Ocwen Loan Servicing, LLC**
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

**U.S. Bank National Association**
3121 Michelson Drive #500
Irvine, CA 92612

**Richard K. Davis, Chairman, President and CEO**
**U.S. Bank National Association as Trustee**
U.S. Bank, N.A.
800 Nicollet Mall
Minneapolis, MN 55402-4302

2

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In Re: | |
|---|---|
| Monette E. Saccameno, | NO. 09-49467 |
| Debtor | Chapter 13 |
| | Honorable Judge Timothy A. Barnes |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §524 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION AND FED. R. BANKR. P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BASED CERTIFICATES, SERIES 2007 RP1 AND OCWEN LOAN SERVICING, LLC.**

**NOW COMES**, MONETTE E. SACCAMENO ("Debtor"), by and through her attorneys, Paul M. Bach and Penelope N. Bach of SULAIMAN LAW GROUP, LTD., bringing this Motion pursuant to 11 U.S.C. §524 for Violations of the Discharge Injunction and Fed. Bankr. P. 9020 Seeking Sanctions for Civil Contempt Against U.S. Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset-Based Certificates, Series 2007 RP1 ("US Bank") and Ocwen Loan Servicing, L.L.C. ("Ocwen") and in support thereof, stating:

JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this proceeding pursuant to 11 U.S.C. §§ 105, 524, and 28 U.S.C. §§ 157 and 1334. This proceeding arises out of and is related to the above-captioned Chapter 13 case under Title 11.

2. This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.

3

3. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409 whereby Ocwen's post-petition actions toward Debtor for the collection of discharged debt occurred in this District.

### PARTIES

4. Monette E. Saccameno was a Debtor under Chapter 13 of Title 11 of the United States Code in Case Number 09-49467 filed December 31, 2009, in the Northern District of Illinois.

5. At all times relevant to the action, US Bank was and is a National Association with its principal place of business in Minneapolis, Minnesota. US Bank conducts and transacts business in the State of Illinois. US Bank is variously liable for the actions of Ocwen in this matter.

6. At all times relevant to the action, Ocwen was and is a Delaware Limited Liability Company with its principal place of business in West Palm Beach, Florida. Ocwen conducts and transacts business in the State of Illinois. Ocwen is variously liable for the actions of US Bank in this matter.

### STATEMENT OF FACTS

7. On January 3, 2002, Debtor obtained a loan ("subject debt" or "subject loan") from Ameriquest Mortgage Company secured by a mortgage on the property located at 3324 Calwagner Street, Franklin Park, IL 60131 ("subject property").

**a. Debtor's Default and Ocwen's Foreclosure Filing**

8. Debtor failed to make payments on the subject loan from about November 2008 through January 2009. Thereafter, US Bank declared her in default.

9. Based on Debtor's failure to make her November 2008 through January 2009 payments, US Bank filed a foreclosure complaint in the Circuit Court of Cook County, Illinois titled *US*

4

*Bank v. Monette E. Saccameno, et al.*, Case No. 09 CH 5697, on February 9, 2009 ("foreclosure").

10. US Bank, in the foreclosure complaint, alleged that Debtor defaulted on the subject loan in November, 2008. *Id.* Based on the default, US Bank accelerated the entire balance of the subject loan.

### b. Debtor's Chapter 13 Bankruptcy

11. On December 31, 2009, after the foreclosure was filed, Debtor filed the instant Chapter 13 bankruptcy to cure all pre-petition defaults on the subject loan.

12. US Bank was duly disclosed on Schedule D of Debtor's bankruptcy petition as a secured creditor as a result of the mortgage encumbering the subject property. *See* Exhibit A attached hereto is a true copy of Schedule D of the Debtor's bankruptcy petition.

13. Also on December 31, 2009, Debtor filed her Original Chapter 13 Plan ("Debtor's Plan") with the Bankruptcy Court. *See* Exhibit B attached hereto is a true copy of Debtor's Original Chapter 13 Plan filed with the Bankruptcy Court.

14. Debtor's Plan, in pertinent part, sought to cure the default as it relates to US Bank, in the amount of $25,713.42. *Id.*

15. On February 1, 2010, Debtor filed a Modified Chapter 13 Plan ("Debtor's Modified Plan"). *See* Exhibit C attached hereto is a true copy of Debtor's Modified Chapter 13 Plan filed with the Bankruptcy Court.

16. Debtor's Modified Chapter 13 Plan dated February 1, 2010 included language in Section B(2)(a), that if the Debtor cured the pre-petition defaults through her bankruptcy payments, "the mortgage will be reinstated according to the original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to filing of the petition." *Id.*

17. Debtor's Modified Chapter 13 Plan dated February 1, 2010 included language that Debtor would pay the mortgage arrears to US Bank by making payments to the Chapter 13 Trustee, and also resume making regular monthly payments to US Bank beginning in January 2010 in the amount of $1,800.00 per month. *Id.*

18. US Bank did not object to its treatment in Debtor's Modified Chapter 13 Plan dated February 1, 2010.

19. Consequently, Debtor's Modified Chapter 13 Plan was confirmed by the Honorable Judge John H. Squires on February 17, 2010. *See* Exhibit D attached hereto is a true copy of the Confirmation Order entered by the Honorable Judge John H. Squires.

20. On October 11, 2011, a Notice of Transfer of Claim was filed in regards to the Subject Loan and Subject Property from U.S. Bank to Ocwen.

### c. Debtor's Full Performance on Terms of the Confirmed Modified Chapter 13 Plan

21. Debtor made all of her payments as proposed in her confirmed Modified Chapter 13 Plan to Marilyn O. Marshall, Chapter 13 Trustee which included the payments for the mortgage arrears to US Bank/Ocwen provided for in Section E5 of the Confirmed Chapter 13 Plan.

22. Additionally, the Debtor made all of her current monthly mortgage payments directly to US Bank/Ocwen as provided by the Confirmed Chapter 13 Plan.

23. While the Chapter 13 case was pending, US Bank/Ocwen never filed a Motion for Relief from Stay.

24. Prior to the change of servicing of the mortgage loan from US Bank to Ocwen, the previous servicer (Litton Loan Services) returned several payments made by the Debtor in violation of the Confirmed Chapter 13 Plan.

6

25. Although the Notice of Transfer of Claim was filed in October 2011, Ocwen began servicing the Mortgage Loan in approximately July 2011. *See* Exhibit E attached hereto is a true copy of an Ocwen Pay History beginning in July 2011 (when the mortgage loan was acquired by Ocwen) to April 2014 ("the Pay History").

26. According to the Pay History, at the time that Ocwen began serving the Mortgage Loan there were fees assessed to the Mortgage Loan Account in the amount of $2,646.50 (no detail provided as to the breakdown of the fees), an Escrow Account Balance of $0.00 (which was adjusted on July 18, 2011 to $-1,130.72) and a Suspense Balance of $2,774.32.

27. Ocwen, during the course of the Chapter 13 case (from when Ocwen was servicing the Mortgage Loan from July, 2011 until June 27, 2013) assessed many fees and expenses which were assessed to the Debtor's Mortgage Account by Ocwen. These fees and expenses included but were not limited to: a) Late Charges of $3,322.98 on September 4, 2011; b) Late Charge of $1,302.43 on September 30, 2011; c) Late Charges of $664.30 on October 24, 2011; d) Property Valuation Expense of February 22, 2012; e) Property Taxes of $2,537.18 on February 24, 2012; f) Escrow Account Adjustment of $5.00 on March 5, 2012; g) Late Charges of $63.34 of October 17, 2012; h) Two Late Charges of $63.34 of October 17, 2012; i) Property Taxes of $3,010.80 on July 27, 2012; j) Insurance Disbursement of $742.00 on August 10, 2012; k) Property Taxes of $3,051.31 on February 19, 2013; l) Escrow Account Adjustment of $6.00 on March 28, 2013; m) Foreclosure Sale costs of $780.00 on May 20, 2013; n) Prior Servicer Fees of $275.63 on May 20, 2013; and Foreclosure Sale costs of $780.00 on June 18, 2013;

28. The Pay History reflects that during the entire time the Chapter 13 was pending and Ocwen was servicing the Mortgage Loan that there existed a large positive balance in Suspense. The highest balance was $12,601.19 but the average was at least $7,000.00 to $8,000.00.

7

Holding funds in suspense and not properly applying those suspense funds allowed Ocwen to charge fees such as Late Fees, Foreclosure Sales and Property Valuation Expenses which could not and should not have been charged. In addition to all the improper charges, Ocwen also returned and/or reversed several payments to create alleged defaults and to make alleged defaults higher when in fact the Debtor was current or had paid in amounts in advance.

29. On June 20, 2013, the trustee filed a Notice of Completion of Plan Payments. *See* Docket Entry 39.

30. On June 27, 2013, the Chapter 13 Bankruptcy Trustee, Marilyn O. Marshall, issued a Notice of Payment of Final Mortgage Cure Under Rule 3002.1(f) as it related to Ocwen. *See* Exhibit F attached hereto is a true copy of the Notice of Payment of Final Mortgage Cure.

31. Ocwen or any other party on behalf of Ocwen failed to file a Response to Notice of Payment of Final Mortgage Cure.

32. On June 27, 2013, the Court entered an Order of Discharge in Debtor's case. *See* Exhibit G attached hereto is a true and correct copy of the Order of Discharge.

33. The failure of Ocwen to timely file a Response to the Notice of Payment of Final Cure and the entry of the Debtor's Chapter 13 Discharge on June 27, 2013 caused the Debtor to be contractually current as of that date (the date the Discharge was issued on June 27, 2013) pursuant to 11 U.S.C. 524, Federal Rule of Bankruptcy Procedure 3002.1 and the language of the Confirmed Plan. Any alleged post-petition bankruptcy default was discharged along with amounts claimed pre-petition in the Proof of Claim of US Bank/Ocwen (Claim 1). In essence, as of the Date of Discharge the Debtor (June 27, 2013) was contractually current with Ocwen (with a principal balance provided for by an amortization table for June 2012 for this Mortgage Loan) with no fees owed and a $0.00 Escrow Account. *11 U.S.C 524, Federal Rule of Bankruptcy*

*Procedure 3002.1 and United Student Aid Funds, Inc. vs. Espinosa, 559 U.S. 260, 276 (2010)* (specifying that party failing to oppose plan at appropriate time may not obtain post-judgment relief).

### d. Ocwen's Continued Efforts to Collect Paid Pre-Petition Arrears

34. What was required by the Debtor's Chapter 13 Discharge and the Bankruptcy Code and Bankruptcy Rules (as well as Case Law) was not effectuated by Ocwen and every one of Ocwen's actions going forward (that is not to say that Ocwen's actions previously were allowed and/or acceptable under the Bankruptcy Code and/or Bankruptcy Rules) were violations of the Discharge Injunction (11 U.S.C. 1328) as stated below.

35. After the issuance of the Chapter 13 Discharge, the Debtor and her representatives contacted Ocwen to discuss the Mortgage Loan. In fact in July 2013, the Debtor provided documents in an attempt to refinance the Mortgage Loan and lower her payments as a result of a lower rate (the Mortgage Loan call for interest at 8.5%). In response to a written inquiry on August 14, 2013, Ocwen stated that only 40 (of 42) current payments were received during the Chapter 13 case and many expenses had been advanced which were unpaid as well. *See* Exhibit H attached hereto is a true copy of the August 14, 2013 Letter from Ocwen with attachments.

36. Despite receiving full payment on its pre-petition arrears claim, Ocwen has repeatedly attempted to collect the pre-petition default (that was not claimed in the Proof of Claim filed by US Bank) and/or post-petition (pre discharge) amounts through the pre-petition foreclosure case (which has not been dismissed) and through continued statements and demands for payment after the Debtor's Chapter 13 Discharge (such as the Reinstatement Statement which is discussed below).

37. The Debtor herself, her original Attorney in the Bankruptcy case and Attorney Susan J. Van Sky have communicated with Ocwen about this issue since July 2013 with no success, thus requiring this Motion and other legal actions to protect the Debtor's rights and enforce her Chapter 13 Discharge.

38. Hoping to cure the *post-petition* default, Debtor requested reinstatement figures to determine as a final attempt at resolution if Ocwen would provide figures which were consistent complied with the Debtor's Chapter 13 Discharge.

39. On October 2, 2014, Ocwen, by and through its attorneys, Potestivo & Associates ("Potestivo"), sent Debtor reinstatement figures relating to the subject loan. *See* Exhibit I attached hereto is a true copy of the Reinstatement Quote.

40. An example of the problems with the Reinstatement Quote is that the Reinstatement Quote seeks payment for "Escrow Due" in the amount of $13,180.86. This is a factual impossibility as only two types of Escrow Expenses have come due post Chapter 13 Discharge. The first type is for real estate taxes for July 2013, March 2014 and July 2014 and total no more than $9,000.00. Insurance is the second type of Escrow Expenses which was paid in October 2013 and 2014 for no more than a total of $1,600.00. However, the Escrow Account had a positive balance up through and including the end of the Pay History in April 2014. At that time, the positive balance was $1,115.79.

41. Amounts requested for payments have similar problems based on the Discharge Order and the fact that Ocwen has continued to accept payments and apply these payments and other amounts received to amounts that were discharged.

42. Debtor's attorneys (several different attorneys) have made repeated requests to Ocwen and its attorneys, to recognize Debtor's bankruptcy payments and to apply post-petition to post-

10

discharge months. Ocwen has ignored, criticized, and refused to recognize Debtor's requests as valid, including her requests for accurate reinstatement figures.

43. Ocwen is seeking to collect pre-petition debts from Debtor, which were paid through her Chapter 13 bankruptcy in violation of the discharge injunction and Federal Rule of Bankruptcy Procedure 3002.1.

### THE PROBLEM AND THE REQUESTED RELIEF

44. Since Plan Confirmation, US Bank/Ocwen has behaved as if the federal bankruptcy laws to do not apply to them in regards to the Debtor's Mortgage Account. US Bank/Ocwen has attempted to collect and enforce a part of the old pre-bankruptcy mortgage as if the Mortgage Loan had never been modified and/or discharged. US Bank/Ocwen is bound by the Confirmed Plan.

45. The Reorganized Debtor respectfully asks this Court for the following:

   a.  Entry of an Order consistent with 11 U.S.C 1328 compelling Ocwen to realign and modify their loan files and computer records to bring the loan's economic characteristics in line with the modifications to the Mortgage Loan made by the Confirmed Plan and Chapter 13 Discharge;

   b.  Entry of an Order compelling Ocwen to not charge the amounts referred to in prior paragraphs which are a violation of the Discharge Order;

   c.  Entry of an order compelling US Bank/Ocwen to reimburse the Debtor for actual (including attorney fees (for multiple attorneys) and other damages as described in this Motion)) and punitive damages incurred as a result of the actions of US Bank/Ocwen's failure to comply with the confirmed plan and the Chapter 13 Discharge.

## LEGAL STANDARD

46. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

47. Where a reorganization plan has been adopted, "[t]he law is well settled that a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *Adair v. Sherman*, 230 F.3d 890, 895 (7th Cir. 2000) (quoting *In re Ross*, 162 B.R. 785, 789 (Bankr. N.D. Ill. 1993)). "When the order of confirmation is entered, it binds the debtor and all creditors to the terms of the plan of reorganization." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 891 F.2d 159, 161 (7th Cir. 1989) (citation omitted). If "a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate." *United Student Aid Funds, Inc. vs. Espinosa, 559 U.S. 260, 276 (2010)*, 559 U.S. 260, 276 (2010) (specifying that party failing to oppose plan at appropriate time may not obtain post-judgment relief).

48. Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

49. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

50. "The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The automatic stay assists debtors in regaining their financial footing by allowing them to do so free

from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive." *In re Curtis*, 322 B.R. 470, 483 (Bankr.D.Mass.2005).

51. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *In re Wagner*, 74 B.R. 898, 903-904 (Bankr.E.D.Pa.1987).

52. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 B.R. 188, 194 (Bankr.E.D.Tenn.1996).

53. In determining if punitive damages are appropriate, the court has looked to (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; (4) any provocation by the debtor; as well as (5) the creditor's sophistication and knowledge of bankruptcy law and procedure. *In re Sumpter*, 171 B.R. 835, 845 (Bankr.N.D.Ill.1994).

### ARGUMENT

54. The Debtor satisfied all of US Bank and/or Ocwen's pre-petition claims and current payments and expenses through June 2013 through her bankruptcy proceeding.

55. The discharge order was issued on June 27, 2013, precluding US Bank and/or Ocwen from attempting to collect any amounts that arose prior to Debtor's bankruptcy filing. Here US

Bank and/or Ocwen waived any right to allege a default when it failed to respond to the Notice of Cure.

56. Despite having notice and actual knowledge of the discharge order, US Bank and/or Ocwen failed to cease collection efforts as evidenced by the post-discharge continuation attempted collection of discharged and paid amounts.

57. US Bank and/or Ocwen willfully violated the discharge order when US Bank and/or Ocwen attempted to collect the discharged debt.

58. US Bank and/or Ocwens' actions in collecting on a satisfied pre-petition debt were deliberate, unlawful, and egregious in nature.

59. US Bank and/or Ocwen disregarded the rights afforded to Debtor by entry of the discharge order.

60. Notwithstanding US Bank and/or Ocwens' active participation in Debtor's bankruptcy, Ocwen has knowingly violated Debtor's rights afforded by the discharge order.

61. Notwithstanding full payments per the terms of her confirmed Modified Chapter 13 Plan dated February 1, 2010, Debtor has been deprived of the protections of 11 U.S.C. §524 and Federal Rule of Bankruptcy Procedure 3002.1.

62. The onus of compliance with the procedures and protections afforded by the Bankruptcy Code is on the highly sophisticated creditor.

63. US Bank and/or Ocwen, as a highly sophisticated and experienced mortgage servicer, should have implemented procedures and trained its employees and agents to both discourage and prevent willful violations of the discharge order. However, the egregious conduct by US Bank and/or Ocwen and its attorneys, at Debtor's expense, establishes otherwise.

Case 09-49467   Doc 53   Filed 01/26/15   Entered 01/26/15 15:53:52   Desc Main
                          Document     Page 15 of 16

64. Upon information and belief, US Bank and/or Ocwen regularly and systematically engages in collection activity in direct violation of the discharge order.

65. This pattern and practice of routinely violating the discharge order in disregard of the Bankruptcy Code demonstrates egregious behavior in arrogant defiance of Federal Law.

### DAMAGES

66. Debtor has been forced to retain counsel to enforce her rights and has expended time consulting with her attorneys as a result of US Bank and/or Ocwens' actions.

67. Debtor has suffered from emotional distress, depression, mental anguish, and anxiety (including medical expenses incurred) as a direct result of US Bank and/or Ocwen's actions as she was led to believe that she would lose her family's residence if she failed to pay the satisfied pre-petition arrears and post-petition current payments already satisfied and/or paid through her bankruptcy.

68. US Bank and/or Ocwen's own attorneys were aware that the foreclosure proceeding sought to collect a discharged debt, yet proceeded with the action.

69. The post-discharge collection attempts were blatant violations of the discharge order.

70. To protect its authority, and to give Debtor the relief that Congress contemplated, this Honorable Court should act promptly and firmly to stop conduct that violates the discharge injunction.

71. In order to protect the spirit of the discharge order as contemplated by Congress, this Court should impose civil contempt sanctions against US Bank and/or Ocwen for its brazen disregard of this Court's orders, including actual damages, punitive damages, costs, and fees.

72. Debtor is entitled to actual damages, including attorneys' fees and costs for US Bank and/or Ocwens' willful violation of the discharge order (including attorney fees of the undersigned, David E. Cohen and Susan J. Van Sky).

73. Debtor is also entitled to punitive damages for US Bank and/or Ocwen's arrogant disregard of the Bankruptcy Code and its provisions.

74. The Court should award punitive damages to deter US Bank and/or Ocwen from future misconduct.

**WHEREFORE,** Debtor Monette E. Saccameno, having set forth her claims for relief against Ocwen, respectfully prays of the Court as follows:

   a. That this Honorable Court enter an order directing US Bank and/or Ocwen to pay a sum determined by the Court to Debtor for actual damages for violations of 11 U.S.C. §524 and Federal Rule of Bankruptcy Procedure 3002.1;

   b. That this Honorable Court enter an order directing US Bank and/or Ocwen to pay a sum determined by the Court to Debtor for punitive damages for violations of 11 U.S.C. §524 and Federal Rule of Bankruptcy Procedure 3002.1;

   c. That this Honorable Court enter an order directing US Bank and/or Ocwen to pay a sum determined by the Court to Debtor for all reasonable legal fees and expenses incurred by his attorneys for violations of 11 U.S.C. §524 and Federal Rule of Bankruptcy Procedure 3002.1; and

   d. That Debtor be provided such other and further relief as the Court may deem just and proper.

Dated: January 26, 2015

Respectfully Submitted,
/s/ Paul M. Bach
Paul M. Bach, Esq.
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181